IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |  | |
|---|---|---|---|
| **MOTORS MANAGEMENT GROUP, INC.,** | ) ) ) | | |
| Plaintiff, | ) ) | | |
| v. | ) ) | Civil Action No. 3:05CV557 | |
| **HOWELL ENTERPRISES, INC., et al.,** | ) ) | | |
| Defendants. | ) | | |

### MEMORANDUM OPINION

This matter is before the court on several pending motions: (1) Motion to Quash Service of Process and Motion to Dismiss by Defendants Howell Enterprises, Inc., (HEI), Corporate Flight Management, Inc., (CFM), Charles Reece Howell (Howell), and David J. Augustin (Augustin) (docket entry nos. 3 & 4);[1] (2) Plaintiff's Motion to Conduct Limited Discovery (docket entry no. 14); and (3) Motion in the Alternative to Transfer by Defendants HEI, CFM and Howell (docket entry no. 16). Having considered the pleadings and the arguments presented therein, the court concludes that oral argument on the pending motions would not be of further assistance in their resolution.

### FACTS

The Plaintiff, Motors Management Group, Inc.(Motors Management), filed a twenty-two count complaint against all of the Defendants alleging causes of action based on breach of

---

[1] Augustin was voluntarily dismissed from this action after the motions on his joint behalf were filed (docket entry nos. 4, 10).

contract, constructive fraud, breach of implied warranty of merchantability, breach of warranty, negligence, and punitive damages. (Compl.). Because Augustin is no longer a Defendant, five of the claims have been abandoned, leaving seventeen of the original claims pending against the remaining three Defendants. The transaction giving rise to all the causes of action stem from the sale by HEI and Howell of a Mitsubishi MU2B–40 airplane (serial number 420SA) (the aircraft) to Motors Management in the fall of 2001.

On October 16, 2001, Motors Management[2] contacted Howell[3] and inquired whether he knew of a Mitsubishi MU2B–40 airplane for sale. (Pl.'s Mem. Opp'n Def.'s Mot. Quash Serv. Process & Mot. Dism. (Pl.'s Mem.), ex. A ¶¶ 5-6 (McGeorge Aff.); ex. B ¶ 4 (Pearson Aff.)). Howell informed Motors Management's pilot (McGeorge) that HEI[4] had such an aircraft for sale and offered to fly it to Virginia that same day, which he did. (McGeorge Aff. ¶¶ 7-8; Pearson Aff. ¶ 4). McGeorge and Pearson met with Howell and inspected the aircraft at an airport in Chesterfield, Virginia. (McGeorge Aff. ¶¶ 9-13; Pearson Aff. ¶¶ 4-5). While in Virginia, Howell promoted the features of the aircraft, including representations about its condition as well as its maintenance history. (McGeorge Aff. ¶ 10; Pearson Aff. ¶ 6). One representation Howell made was that the aircraft had 5400 hour time-between-overhaul (5400 TBO) engines. (Compl.

---

[2] A Florida corporation with its principal place of business in Richmond, Virginia, and Mr. Max Pearson as its principal.

[3] An individual whose domicile is Tennessee. The Complaint alleges, and Howell's affidavit confirms, that Howell is the President of HEI. (Compl. ¶ 4; Howell Aff. ¶ 1). At all relevant times, the court finds it is sufficiently alleged that Howell acted on behalf of HEI and they are to be considered as one and the same for purposes of resolving the pending motions, as is Pearson and Motor Management.

[4] A Tennessee Corporation with its principal place of business in Smyrna, Tennessee.

¶ 11). At the conclusion of the meeting and exhibition of the aircraft, Howell and Pearson discussed, if not agreed on the basic terms of the sale of the aircraft by HEI to Motors Management, including a purchase price of $750,000. (McGeorge Aff. ¶¶ 11-12; Pearson Aff. ¶ 6). Although the Defendants dispute that an enforceable agreement was reached between Howell and Pearson at the meeting because Howell did not have final authority to agree to a sale, the same basic terms that were ultimately included in written agreements that followed were at least negotiated at the initial meeting in Virginia. (Defs.' Reply Mem. Supp. Mot. Quash Serv. Process & Mot. Dism. Or Alt., Mot. Transfer at 1-2; McGeorge Aff. ¶ 11; Pearson Aff. ¶ 6). After the parties orally agreed on the terms of the sale, Howell flew the aircraft back to Tennessee. (McGeorge Aff. ¶ 12).

On October 17, 2001, pursuant to the terms discussed on October 16, 2001, Howell sent the maintenance records and logbooks for the aircraft from his office in Tennessee to McGeorge at the Richmond Jet Center at Richmond International Airport. (McGeorge Aff. ¶ 14). Together with employees at the Richmond Jet Center, McGeorge reviewed the records, and in doing so he noticed several log entries that he did not think corresponded with representations that Howell had made the previous day – in particular, that the aircraft had 5400 TBO engines. (McGeorge Aff. ¶ 15). McGeorge contacted Howell regarding the discrepancy after which numerous conversations took place by telephone. (McGeorge Aff. ¶ 16). McGeorge returned the records to Howell who then engaged CFM at Pearson's expense to "tear down" the engines and perform an inspection that was supposed to "bring them up to the manufacturers' standards as they had been offered and described by Howell." (McGeorge Aff. ¶ 17; Pl.'s Mem., ex. C (Contract)). On November 6, 2001, Howell and Pearson memorialized in writing the basic terms that were

negotiated on October 16, 2001.  (McGeorge Aff. ¶ 18; Pearson Aff. ¶ 7; Contract)).  The contract did not include any choice of law designation or forum selection clause.  (Contract).  A second written agreement was executed by the parties on November 29, 2001, that included the same basic terms as the November 6 version with additional provisions, including a choice of law designation specifying that Tennessee law would govern any dispute.  (Defs.' Br. Supp. Mot. Quash Serv. Process & Mot. Dism., ex. 5).  However, no forum selection clause was included.  Id.

Once CFM completed the maintenance work, McGeorge took delivery of the aircraft in Smyrna, Tennessee, on December 6, 2001, and returned to Virginia.  (McGeorge Aff. ¶ 19). Motors Management used the aircraft from December 5, 2001, until May 27, 2004, when one of the engines experienced severe mechanical problems while in flight over Virginia necessitating expensive costs and repairs that are the basis of the instant litigation.  (McGeorge Aff. ¶ 20). Following the engine malfunction, McGeorge contacted Howell by telephone and written correspondence on several occasions, including conversations initiated by Howell.  (McGeorge Aff. ¶ 21).  Howell also traveled to Virginia for aviation-related business approximately five times (that McGeorge is aware of) , including soliciting business at a particular aircraft show ("Prop2004") in Richmond, Virginia.  (McGeorge Aff. ¶ 22). Motors Management asserts that CFM failed to properly perform maintenance work which resulted in the engine failure (McGeorge Aff. ¶ 23), and relevant to issues of personal jurisdiction, that CFM flies or has flown clients to Richmond and Hot Springs, Virginia, as well as having sold at least one other aircraft

to a company in Richmond, Virginia, complete with flight crew. (McGeorge Aff. ¶ 24).[5]

## ANALYSIS

**Personal Jurisdiction**

Defendants' motions challenge the Plaintiff's invocation of personal jurisdiction in the Eastern District of Virginia that is, of course, necessary to sustain the action. When personal jurisdiction is challenged, a plaintiff is required to "prove the existence of a ground for jurisdiction by preponderance of the evidence." Combs v. Bakker, 886 F.2d 673, 676 (4th Cir. 1989). The parties have submitted affidavits and other evidence in support of their respective positions and the Plaintiff has sought leave to conduct limited discovery concerning the issue because it asserts that there are "significant gaps in the record as to the nature and extent of the Defendants' contacts with this forum." (Pl.'s Mem. Supp. Mot. Conduct Lt'd Disc. (quoting Coastal Video Communications, Corp. v. The Staywell Corp., 59 F.Supp. 2d 562, 572 (E.D. Va. 1999)). The Defendants have submitted affidavits, but the Plaintiff asserts they are insufficient because they fail to rebut the factors favoring jurisdiction and instead merely rely on the fact that each Defendant is a foreigner to Virginia in that they do not reside in Virginia, do not own property in Virginia, and are not incorporated in Virginia.[6] The court can nevertheless address

---

[5]The Complaint contains a good deal of detail relating to the nature of the misrepresentations about the engines, the maintenance, and the specificity of the fraud alleged by Howell and HEI. While the affidavits supplied by McGeorge and Pearson do not contain the level of detail found in the Complaint, they describe contacts to establish at least a *prima facie* case of jurisdiction, but only as concerns Howell and HEI.

[6]For the purposes of this motion, it is not disputed that Howell as agent for HEI and HEI derived substantial revenue from the transaction in question and that they had more contact with Virginia in relation to the transaction than just the one flight on October 16, 2001. *See* Bay Tobacco, LLC v. Bell Quality Tobacco Prods., LLC, 261 F.Supp.2d 483, 495 (E.D. Va. 2003).

the threshold issue concerning jurisdiction on the basis of the pleadings and moving documents submitted where the Plaintiff need only carry the burden of demonstrating a *prima facie* showing of personal jurisdiction. In so doing, the court construes the allegations relevant to the question of jurisdiction in the light most favorable to the non-moving party (the Plaintiff), drawing all reasonable inferences in favor of the existence of jurisdiction.  Id.  At the same time, even though the Plaintiff may prevail in demonstrating a *prima facie* jurisdictional basis, any contested factual issue concerning jurisdiction must ultimately be resolved by evidentiary hearing or at trial by a preponderance of the evidence.[7]  Id.

A challenge to personal jurisdiction by a non-resident defendant is resolved by a two-step inquiry regardless of whether it is raised in regard to a *prima facie* showing or later in the analytical sequence.  Burger King Corp. v. Rudzewicz, 471 U.S. 462, 463-464 (1985).  First, as concerns the instant case, the court must analyze whether Virginia's long-arm statute authorizes jurisdiction over the Defendants in the context of the facts and each of the claims asserted. Ellicott Mach. Corp., Inc. v. John Holland Party Ltd., 995 F.2d 474, 477 (4th Cir. 1993).  Second, the court must assess whether the exercise of jurisdiction comports with constitutional due process.  Id.  To determine whether the exercise of jurisdiction satisfies constitutional due process, the court must determine whether each Defendant purposely established at least minimum contacts with Virginia by directing activities toward individuals or entities in Virginia so as to allow for the conclusion that the party had to reasonably expect the potential for Virginia jurisdiction.  Id.  A single contact between parties may satisfy the minimum contacts required to

---

[7]Because the Plaintiff has supplied unrebutted evidence of Howell and HEI's contact with Virginia in this as well as other transactions, there is no factual dispute at present concerning jurisdiction that necessitates an evidentiary hearing.

assert jurisdiction *if* the contact is of a nature that demonstrates a party purposely transacted business in the jurisdiction, thereby willingly subjecting itself to potential jurisdiction.  Processing Research, Inc.  v. Larson, 686 F.Supp. 119, 121 (E.D. Va. 1988);  Bay Tobacco, LLC v. Bell Quality Tobacco Prods., LLC, 261 F. Supp.2d 483, 493 (E.D.Va. 2003).  However, even if the minimum contacts inquiry is answered affirmatively, the court must still determine whether the suit is nonetheless antithetical to the "concept of 'fair play and substantial justice'" considering other relevant factors presented.  Ellicott Mach. Corp., Inc. v. John Hollard Party Ltd., 995 F.2d at 477.

Courts have recognized that a party may be subject to either specific jurisdiction, triggered by a defendants' contacts with the forum in a particular series of events, or general jurisdiction, where defendants have maintained systematic and continuous contacts with the forum jurisdiction over time.  Reynolds & Reynolds Holdings, Inc. v. Data Supplies, Inc., 301 F.Supp. 2d 545, 549 (E.D.Va. 2004).  The burden in proving general jurisdiction is higher than that for establishing specific jurisdiction in that general jurisdiction requires proof of "continuous and systematic" contact.  Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 419 (1984); *see also* ESAB Group, Inc. v. Centricut, Inc., 125 F.3d 617, 623-624 (4th Cir. 1997).  Plaintiffs assert that the Defendants are subject to specific jurisdiction under the Virginia long-arm statute for their roles and participation in Virginia in the particular transaction in issue; by causing tortious injury to Virginian sources for acts and omissions within and outside Virginia; by causing injury by breach of warranty in the sale of goods outside Virginia that were reasonably expected to be used in Virginia; and that the Defendants either regularly do business in, or derived substantial revenues from, the sale and use of goods in Virginia.  (Pl.'s Mem.).

**Howell and HEI**

Focusing on the nature and quality of the acts that give rise to the dispute, it is the formation of the contract for the sale of the aircraft that is the basis of deciding whether jurisdiction is proper in this court. The court finds in this regard that although the initial contact was a telephone call from McGeorge to Howell inquiring about a specific aircraft, the most pertinent event was when Howell voluntarily flew the aircraft to Virginia on the same day in an obvious effort to sell it to the Virginia plaintiff. In Virginia, Howell, on behalf of HEI, promoted the sale of the aircraft, made material representations about the engines, the aircraft's ownership history, and the condition of the aircraft.[8] Howell also stated an asking price and negotiated a lower price that was accepted before Howell departed Virginia.[9] In addition, as part of the oral agreement, Howell forwarded the aircraft's maintenance records on the next day to the Plaintiff in Virginia and thereafter engaged in numerous communications regarding the transaction, such communications originating in both Virginia and Tennessee. The parties also contemplated and accomplished delivery of the aircraft in Virginia as part of the agreement. Although McGeorge's phone call from Virginia to Tennessee initiated the relationship, all of the substantive acts, most particularly Howell's material representations about the condition and ownership of the aircraft, as well as at least negotiations about the basic terms, including price, and, finally, the ultimate failure of one of the engines, all took place in Virginia. *See* Bay Tobacco, LLC v. Bell Quality Tobacco

---

[8] All the material actions by Howell were taken on behalf of HEI and, therefore, they are to be considered as one and the same for purposes of determining the jurisdictional issue.

[9] Again, the Defendants assert that no final agreement was reached at the meeting in Virginia, but, at the very least, substantive acts occurred, including agreement on the ultimate sale price.

Prods., LLC, 261 F.Supp. 2d 483, 493 (E.D. Va. 2003).

The Defendants base their argument in contesting jurisdiction on a 1983 district court case in which the court held that the seller did not have minimum contacts to qualify as "transacting business" in Virginia sufficient to establish jurisdiction. (Defs.' Br. Supp. Mot. Quash Service Process & Mot. Dism. (Defs.' Br.), citing Luke v. Dalow Indus. Inc., 566 F.Supp. 1470, 1472 (E.D. Va. 1983)). There, the court found that although the defendant had business contact with Virginia, the contracts for the particular transaction involved were made and performed in a foreign state, thus failing to satisfy the minimum contacts test for specific jurisdiction. Id. at 1472 (citations omitted). In this case, however, not only were the basic terms of the contract negotiated in Virginia, but much of the conduct giving rise to the tort and breach claims concerning the engines arose from the Defendants' actions in Virginia as well. Moreover, the Defendants obtained a $750,000 sale from the aircraft paid by Virginia residents which the court finds to be consistent with the concept of "substantial revenue" as relevant to determining minimum contact. Bay Tobacco, 261 F.Supp. at 495 (finding generally that the amount in question must exceed $300). Accordingly, a business transaction was, at the very least, substantially conducted in Virginia sufficient to establish contact that justifies the exercise of specific jurisdiction.

Finally, in order to satisfy the due process requirement, the court must also find that Howell and HEI purposely availed themselves of this jurisdiction. Because Howell flew the aircraft to Virginia, made representations in Virginia about it, negotiated a deal in Virginia to sell it, and engaged in numerous communications thereafter with the Virginia plaintiff concerning the transaction, the court finds that such contact is of sufficient quality to find that Howell and HEI reasonably expected that they would be subject to Virginia jurisdiction for any dispute. Bay

Tobacco, 261 F.Supp.2d at 497.

### CFM

Whether jurisdiction is properly invoked against CFM is more problematic, for even construing as true all of the allegations of the Complaint regarding CFM's misrepresentations about the work it performed on the aircraft – and even though the Plaintiff has alleged that CFM has at least general contact with Virginia – it cannot be said that CFM purposely availed itself of the privilege to do business in Virginia so as to invoke the benefits and obligations of its laws. Hanson v. Denckla, 357 U.S. 235, 253 (1958). Accepting as true the Plaintiff's allegations that CFM has contact and does business in Virginia by having sold at least one other aircraft (for which it also provided the crew) as well as providing charter service into Virginia, CFM contracted with Howell and HEI to perform work in Tennessee, a contractual relationship that appears neither to have involved assent by Motors Management nor contact with Virginia. (Pl.'s Opp. Mem., ex. C). Such facts do not disclose a reasonable likelihood that CFM should have anticipated being subject to the jurisdiction of any court other than in Tennessee and, accordingly, the action cannot be maintained against it in this forum. Processing Research, 686 F.Supp at 123.

**Plaintiff's Motion for Limited Discovery**

The Plaintiff has moved for discovery on the jurisdictional issue. Having found jurisdiction exists in this court as to Howell and HEI, the remaining issue is whether discovery, limited or otherwise, should be permitted as to CFM. While there is disputed evidence regarding what general contact CFM had with Virginia, ultimately, the resolution of the issue of the extent of CFM's general contacts would not be dispositive because the Plaintiff is asserting specific jurisdiction for which the facts are known and the parallel due process requirement that CFM be

found to have reasonably anticipated being subject to Virginia jurisdiction pursuant to its role in the transaction cannot be met for the reasons already discussed. Therefore, the request for discovery must be denied.

**Defendants' Motion to Transfer Venue**

Should the court find jurisdiction, as it has concerning Howell and HEI, the Defendants have moved in the alternative to transfer venue to the appropriate Tennessee federal court. (Def.'s Mot. in Altern. Transfer). The Fourth Circuit's holding in Landers v. Dawson Construction Plant, Ltd., No. 98-2709, 1999 U.S. App. LEXIS 28474 (4th Cir. Nov. 2, 1999) (unpublished) that involved a § 1404(a) transfer motion is relevant. In Landers, the Court of Appeals identified seven factors that courts consider in resolving motions pursuant to § 1404(a):

> [t]he following factors are commonly considered in ruling on a motion to transfer: (1) the ease of access to the sources of proof; (2) the convenience of the parties and witnesses; (3) the cost of obtaining the attendance of the witnesses; (4) the availability of compulsory process; (5) the possibility of a view by the jury; (6) the interest in having local controversies decided at home; and (7) the interests of justice.

Id. at *5. *See also*, BHP Int'l Inv., Inc. v. OnLine Exch., Inc., 105 F.Supp. 2d 493, 498 (E.D. Va. 2000) (analyzing the same factors in a case involving a forum selection clause of a contract). The Defendants have argued that the factors militate in favor of a transfer to Tennessee because the "the remaining defendants are all in Tennessee. The contract . . . was made under Tennessee law. The aircraft was purchased and delivered in Tennessee. The maintenance performed on the aircraft was done in Tennessee. The plaintiff's initial contact with the defendants was in Tennessee. All the witnesses for the defendants reside in Tennessee." (Defs.' Br. Supp. Mot. in Altern. Transfer at 3). Furthermore, the Defendants argue that the interests of justice would best

be served if the case were transferred.

The Plaintiff is entitled to deference in its choice of forum if it is that party's "home" forum, but such deference is lessened if the plaintiff chooses a "foreign" battleground:

> [t]he weight given the plaintiff's choice varies in proportion to the connection between the forum and the cause of action. Thus, a plaintiff's choice of its home forum is given more weight than its choice of a foreign forum. When a plaintiff chooses a foreign forum and the cause of action bears little or no relation to that forum, the plaintiff's chosen venue is not entitled to such substantial weight.

GTE Wireless, Inc. v. Qualcomm, Inc., 71 F.Supp. 2d 517, 519 (E.D. Va. 1999)(citations omitted). Various district courts in the Fourth Circuit have further clarified that "[t]he interest of justice factors include such circumstances as 'the pendency of a related action, the court's familiarity with the applicable law, docket conditions, access to premises that might have to be viewed, the possibility of an unfair trial, the ability to join other parties, [and] the possibility of harassment.'" Id.

In this case, the Plaintiff chose its home forum where at least the basic terms of the contract were negotiated, where the tortious representations were made, and where the engine failed causing the Plaintiff to learn of the variance between the representations and the equipment it had purchased. The Plaintiff and its proof of substantial events involved in the dispute are located within the Eastern District of Virginia with relative ease of access and available process at minimal expense for at least many of the potential witnesses. No jury view is likely involved and any interest "in having local controversies decided at home" is addressed by venue being found in the district of the Plaintiff's principal place of business. In addition, although Tennessee law will govern by contractual provision, and a federal court in that venue may fairly be assumed to be

more familiar with that state's laws, this court frequently confronts such choice of law scenarios such that the circumstance is of minimal significance. Moreover, the case has been pending in this court for several months and will be scheduled for trial in the near future. There is no reason to believe that transfer would result in a more expeditious resolution and, if anything, to the contrary. In summary, though it undoubtedly would be more convenient to the Defendants to have the case tried in Tennessee, they have failed to adequately demonstrate a reason that would tip the scale in favor of transfer. *See* Id.

## CONCLUSION

For the reasons discussed herein, jurisdiction over this case is proper in the Eastern District of Virginia against Howell and HEI, but not against CFM, and Plaintiff's request for limited discovery is to no avail. Furthermore, the Defendants have failed to demonstrate a sufficient reason to transfer this case to Tennessee.

An appropriate Order shall issue.

It is so Ordered.

_____/s/_____
Dennis W. Dohnal
United States Magistrate Judge

Dated: 12/8/05